IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

JIDONG ZHANG,                         §
                                      §
        Plaintiff,                    §
                                      §
vs.                                   §   CASE NO. CIV-16-1044-SLP
                                      §
TIPTOP ENERGY PRODUCTION              §
U.S., LLC, a limited liability company, §
                                      §
        Defendant.                    §

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## AND BRIEF IN SUPPORT

Defendant Tiptop Energy Production U.S., LLC ("Tiptop") moves for summary

judgment on all claims brought by Plaintiff Jidong Zhang.  FED. R. CIV. P. 56.

# TABLE OF CONTENTS

EXHIBITS ............................................................................................................... iv

TABLE OF AUTHORITIES ...................................................................................... v

I. STATEMENT OF NATURE AND STAGE OF PROCEEDING ............................... 1

II. SUMMARY OF THE ARGUMENT ...................................................................... 1

III. STATEMENT OF UNDISPUTED FACTS ............................................................ 2

    A. Zhang's Employment History ...................................................................... 2

    B. Zhang's Demotion ....................................................................................... 2

    C. Zhang's Pregnancy ...................................................................................... 3

    D. Zhang's Paid Leave ..................................................................................... 6

    E. Zhang's Return to Work and Voluntary Resignation .................................... 7

    F. The EEOC's Dismissal of Zhang's Discrimination Charges ......................... 8

IV. STANDARD OF REVIEW .................................................................................. 8

V. ARGUMENT AND AUTHORITIES ...................................................................... 9

    A. Binding Tenth Circuit authority establishes that, as a matter of law, Zhang cannot hold Tiptop liable for SIPC's alleged discriminatory acts because Title VII does not cover SIPC. ............................................................... 9

    B. Zhang's national-origin discrimination claim fails as a matter of law because SIPC based the decision on Zhang's immigration status and not her national origin. ................................................................................... 12

    C. Tiptop did not treat Zhang differently or harass her based on gender (including pregnancy). ......................................................................... 15

        1. Because China's One-Child Policy applies to both men and women, any alleged consequences from Zhang's policy violation—including statements regarding repercussions for the violation—cannot constitute discrimination as a matter of law. ................................................... 16

2.  Tiptop did not treat Zhang less favorably by stopping expense reimbursements because it did so for all expatriate employees, regardless of gender. ..................................................................... 17

3.  Zhang has no evidence that she received a less favorable performance evaluation because of her gender or pregnancy................................................ 18

4.  Zhang has no evidence that her work assignments diminished because of her gender or pregnancy. ............................................................................ 19

5.  Zhang's hostile-work-environment claim fails for the same reasons as her gender-discrimination claim. .................................................................... 21

D.  Zhang's retaliation claim fails. ............................................................................. 22

E.  Zhang voluntarily resigned her employment with Tiptop...................................... 24

F.  Zhang's admission that SIPC would have transferred her back to China no later than four years after she began working for Tiptop cuts off her claimed damages. ............................................................................................................... 28

G.  Because Zhang's Title VII claims fail, her OADA claims necessarily fail. .......... 29

VI.        CONCLUSION .................................................................................................. 30

**EXHIBITS**

EXHIBIT A – Excerpts from Deposition of Jidong Zhang

EXHIBIT B – Excerpts from Deposition of Li Feng dated October 26–27, 2017

EXHIBIT C – Excerpts from Deposition of Li Feng dated December 19, 2017

EXHIBIT D – Excerpts from Deposition of Zhuo Wang

EXHIBIT E – Excerpts from Deposition of Nana Xu

EXHIBIT F – Excerpts from Certified EEOC Records

EXHIBIT G – Excerpts from Deposition of Jeff Leonard

EXHIBIT H – Unpublished Authorities Cited in Brief

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) ........................................................................................8

*Argo v. Blue Cross & Blue Shield of Kan., Inc.,*
  452 F.3d 1193 (10th Cir. 2006) ....................................................................22

*Ayala v. Summit Constructors, Inc.,*
  788 F. Supp. 2d 703 (M.D. Tenn. 2011) ......................................................29

*Barzellone v. City of Tulsa,*
  210 F.3d 389, 2000 WL 339213 (10th Cir. 2000) ........................................29

*Brownlee v. Lear Siegler Mgmt. Servs. Corp.,*
  15 F.3d 976 (10th Cir. 1994) ............................................................9, 10, 12

*Buchanan v. Sherrill,*
  51 F.3d 227 (10th Cir. 1995) ........................................................................27

*Burger King v. Rudzewicz,*
  471 U.S. 462 (1985) ........................................................................................8

*Burlington N. & Santa Fe Ry. Co. v. White,*
  548 U.S. 53 (2006) ........................................................................................23

*Cinnamon Hills Youth Crisis Ctr., Inc. v. Saint George City,*
  685 F.3d 917 (10th Cir. 2012) ......................................................................13

*Coleman v. Hous. Indep. Sch. Dist.,*
  113 F.3d 528 (5th Cir. 1997) ........................................................................10

*Cortezano v. Salin Bank & Tr. Co.,*
  680 F.3d 936 (7th Cir. 2012) ........................................................................13

*Cunningham v. Skilled Trade Servs., Inc.,*
  No. CIV-15-803-D, 2015 WL 6442826 (W.D. Okla. Oct. 23, 2015) ...........29

*Daemi v. Church's Fried Chicken, Inc.,*
  931 F.2d 1379 (10th Cir. 1991) ....................................................................25

*EEOC v. Ilona of Hungary, Inc.,*
  108 F.3d 1569 (7th Cir. 1997) ......................................................................28

*EEOC v. PVNF, L.L.C.,*
  487 F.3d 790 (10th Cir. 2007)......................................................................25

*Espinosa v. Farah Mfg. Co.,*
  414 U.S. 86 (1973) ......................................................................................13

*Exum v. U.S. Olympic Committee,*
  389 F.3d 1130 (10th Cir. 2004).....................................................................25

*Forrester v. Apex Remington, Inc.,*
  No. 14-CV-0306-CVE-PJC, 2015 WL 1499217 (N.D. Okla. Apr. 1, 2015).................29

*Gross v. Burggraf Constr. Co.,*
  53 F.3d 1531 (10th Cir. 1995).......................................................................21

*Guimaraes v. Supervalu, Inc.,*
  674 F.3d 962 (8th Cir. 2012)........................................................................14

*Hiatt v. Colo. Seminary,*
  858 F.3d 1307 (10th Cir. 2017)...............................................................14, 17

*Houck v. City of Prairie Village,*
  166 F.3d 1221, 1998 WL 792154 (10th Cir. 1998) ........................................16

*Jones v. Denver Post Corp.,*
  203 F.3d 748 (10th Cir. 2000)...........................................................19, 20, 24

*Lounds v. Lincare, Inc.,*
  812 F.2d 1208 (10th Cir. 2015)....................................................................19

*Matsushita Elec. Indus. Co. v. Zenith Radio,*
  475 U.S. 574 (1986) ......................................................................................9

*McDonnell Douglas Corp. v. Green,*
  411 U.S. 792 (1973) ....................................................................................12

*Meritor Savings Bank v. Vinson,*
  477 U.S. 57 (1986) ......................................................................................21

*Penry v. Fed. Home Loan Bank of Topeka,*
  155 F.3d 1257 (10th Cir. 1998).............................................................16, 25

*Piantanida v. Wyman Ctr., Inc.,*
  116 F.3d 340 (8th Cir. 1997)..................................................................16, 17

*Roberts v. Indep. Sch. Dist. No. 12,*
    No. CIV-13-1245-HE, 2014 WL 1347379 (W.D. Okla. Apr. 3, 2014)..........................29

*Sanchez v. Denver Pub. Sch.,*
    164 F.3d 527 (10th Cir. 1998)....................................................................13

*Sandoval v. City of Boulder,*
    388 F.3d 1312 (10th Cir. 2004)..................................................................28

*Saville v. Int'l Bus. Machines Corp.,*
    188 F. App'x 667 (10th Cir. 2006) ............................................................26

*Stover v. Martinez,*
    382 F.3d 1064 (10th Cir. 2004)..................................................................22

*Turnwall v. Trust Co. of Am.,*
    146 F. App'x 983 (10th Cir. 2005) .......................................................25, 26

*Vaughn v. Villa,*
    537 F.3d 1147 (10th Cir. 2008)..................................................................22

*Yearous v. Niobrara Cty. Mem'l Hosp.,*
    128 F.3d 1351 (10th Cir. 1997)..................................................................25

## Statutes

42 U.S.C. § 2000e-1(c)(2) ................................................................................9

42 U.S.C. § 2000e-2(a)(1) ..............................................................................12

## Rules

FED. R. CIV. P. 56 ............................................................................................1

FED. R. CIV. P. 56(c)........................................................................................8

## I.   STATEMENT OF NATURE AND STAGE OF PROCEEDING

This is an employment dispute by a former Tiptop employee who voluntarily resigned her employment in January 2016.  Jidong Zhang, a Chinese citizen and woman of Chinese national origin, alleges that Tiptop violated Title VII of the Civil Rights Act of 1964 ("Title VII") and the Oklahoma Anti-Discrimination Act ("OADA") by discriminating against her because of gender (including pregnancy) and national origin, creating a hostile work environment, retaliating against her for having filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"), and constructively discharging her.  Tiptop moves for summary judgment on all of Zhang's claims.

## II.   SUMMARY OF THE ARGUMENT

The Court should grant summary judgment to Tiptop on all of Zhang's claims for the following reasons:

(1)   As a Chinese state-owned company with no U.S. operations, Tiptop's parent company—Sinopec International Petroleum Exploration and Production Corporation ("SIPC")—is not subject to U.S. employment laws. Under well-established Tenth Circuit Zhang therefore may not impute SIPC's allegedly discriminatory conduct to Tiptop.

(2)   Zhang's demotion resulted from her and her husband's immigration status—their refusal to relinquish their U.S. lawful permanent resident ("LPR") status—and not Zhang's national origin.

(3)   Zhang has no evidence, other than her subjective belief, that her gender or pregnancy motivated any of the alleged adverse employment actions or that Tiptop's legitimate nondiscriminatory reasons for such actions are pretexts for gender or pregnancy discrimination.

(4)   Zhang cannot show a causal connection between her protected activity and any alleged adverse employment action and has no evidence that Tiptop's

legitimate nondiscriminatory reasons for such actions are pretexts for retaliation.

(5)     Zhang voluntarily resigned her employment after having returned to work for only three weeks following a nearly six-month maternity leave and has no evidence of objectively intolerable working conditions to sustain a constructive-discharge claim.

(6)     Because Zhang admits that she would have returned to China under SIPC's rotation policy no later than June 2016, any back-pay recovery is limited.

## III.    STATEMENT OF UNDISPUTED FACTS

1.      Tiptop is a wholly-owned subsidiary of SIPC, a Chinese state-owned company.   Compl. ¶ 4 (Dkt. No. 1); Deposition of Jidong Zhang ("Zhang Dep.") at 9:2-10 (attached as ex. A).   Headquartered in Beijing, SIPC does not operate in the United States, although it rotates certain employees to posts in the United States and other countries.   Zhang Dep. at 51:8-11.   In addition to the SIPC-assigned expatriates, Tiptop employs local U.S. workers (some, but not all, of whom are of Chinese national origin).   *Id.* at 45:16-25.

### A.    Zhang's Employment History

2.      In 2006, Zhang, a Chinese citizen, joined SIPC.   *Id.* at 21:25-22:2.   She signed a labor contract with SIPC in 2009.   *See id.* at 24:17-25:8 & ex. 1.   In June 2012, SIPC assigned Zhang to work overseas as a Financial Manager for Tiptop, its then newly-formed U.S. subsidiary.   *See id.* at 27:8-18.   After SIPC transferred her to the United States, it continued to employ her and pay a portion of her salary in China; Tiptop paid Zhang its portion of her salary in the United States.   *See id.* at 12:12-13:2.

### B.    Zhang's Demotion

3.      In 2014, pursuant to both Communist Party of China ("CPC") policy and

Sinopec[1] policy (as interpreted by SIPC), SIPC conducted a company-wide audit to determine which employees, and their spouses or children, held permanent-resident status of countries other than China. *Id.* at 109:10-116:1. In mid-2014, Zhang misrepresented in a written disclosure that she and her husband did not have LPR status. *Id.* at 111:5-112:11. Two days later, she revised her disclosure to state that she and her husband had LPR status. *Id.* at. 112:12-14. Because Zhang and her husband were LPRs, SIPC directed Tiptop to demote Zhang to Senior Accountant in March 2015—before Zhang contends she mentioned her pregnancy to Tiptop. Deposition of Li Feng dated October 26–27, 2017 ("Feng Dep.") at 218:19-219:15 (attached as ex. B). Other SIPC overseas employees assigned to other countries—both men and women—received demotions for the same reason. Zhang Dep. at 115:8-116:1; Deposition of Li Feng dated December 19, 2017 ("Corporate Rep. Dep.") at 15:24-16:14 & ex. 21 (attached as ex. C).

## C.      Zhang's Pregnancy

4.      Zhang did not tell Tiptop about her pregnancy until May 2015. Zhang Dep. at 11:10-13; Compl. ¶ 11. On or about May 27, 2015—after Zhang had done so—SIPC informed Tiptop that, effective July 2015, it would rotate Zhang and another pregnant expatriate employee, Wu Han (who also transferred to the United States in mid-2012), back to China. Corporate Rep. Dep. at 37:2-25 & ex. 26.

5.      SIPC (not Tiptop) has a policy that pregnant expatriate employees must return to China. *Id.* at 31:1-32:8, 192:21-24; Feng Dep. at 264:15-18. SIPC also

---

[1]      Sinopec, formerly known as China Petroleum & Chemical Corporation, wholly owns SIPC. *See* Zhang Dep. at 9:11-17.

maintains a rotation policy under which an SIPC employee assigned to work in "Zone One," which includes the United States, should rotate every three years, but may remain for one additional year if required (the "3+1 Rotation Policy").  Corporate Rep. Dep. at 150:1-22 & ex. 57.  The 3+1 Rotation Policy applied to Zhang, and SIPC eventually would have rotated her back to China under that policy.  Zhang Dep. at 43:2-17.

6.    Upon  learning  about  SIPC's  rotation  order,  Zhang  had  numerous conversations with Zhongying Wang, Tiptop's President, and Li Feng, Tiptop's Office Manager.[2]  *Id.* at 37:2-38:16, 40:3-43:24, 50:23-51:7, 56:6-16 & exs. 2-4.  During those discussions, Wang and Feng told Zhang that she could abide by SIPC's policy and return to China or resign her employment with SIPC and possibly continue as a local Tiptop employee with the same pay rate.  *Id.* at 40:3-43:24, 50:23-51:7 & ex. 3.  Wang also expressed to Zhang that he had no ability to control or alter SIPC's policies.  *Id.* at 40:21-41:11.

7.    Zhang  subsequently  presented  a  doctor's  note  that  restricted  her  travel because of her pregnancy.  *Id.* at 61:25-62:9; Corporate Rep. Dep. at 54:21-24.  In response, SIPC notified Tiptop that it would not require Zhang to return to China at that time and extended her assignment in the United States.  Corporate Rep. Dep. at 82:14-84:9 & ex. 39.  Zhang thus continued her employment with Tiptop.  Zhang Dep. at 62:6-12.

8.    Zhang's second child was due in July 2015.  *Id.* at 87:18-20.  Before Zhang

---

[2]    Like Zhang, Wang and Feng were expatriates whom SIPC also employed.  Feng. Dep. at 268:21-269:9.

left for maternity leave, Zhang's manager—Financial Manager Jiang Xiang—asked Finance Department employees to report Zhang's presence and not give Zhang access to sensitive financial documents. *Id.* at 76:19-77:21; Deposition of Zhuo Wang ("Wang Dep.") at 31:25-32:21 (attached as ex. D); Deposition of Nana Xu ("Xu Dep.") at 63:6-24 (attached as ex. E). Around mid-June 2015—the time Zhang alleges that Xiang reduced her responsibilities and denied her access to certain financial information—Zhang complained to Wang and SIPC that Xiang had submitted improper expense reimbursements. Zhang Dep. at 16:16-20:7. Various Tiptop employees asserted that Zhang's accusations of financial improprieties, not her pregnancy, motivated Xiang's alleged maltreatment. Feng Dep. at 148:9-153:22, 170:17-172:17, 181:1-182:3; Xu Dep. at 55:20-56:17. Zhang does not know whether her complaints about Xiang motivated his alleged mistreatment of her. Zhang Dep. at 73:14-19.

9.      Zhang alleges that she submitted expense reimbursements that Tiptop did not pay during the summer of 2015. Compl. ¶ 17. Following an audit of the allowances Tiptop had provided the overseas employees, SIPC updated its policy that ceased certain expense reimbursements to, and required repayment of unauthorized benefits by, all Tiptop expatriate employees. Zhang Dep. at 98:12-99:7, 103:14-104:5; Corporate Rep. Dep. at 156:19-157:17 & ex. 58. Tiptop therefore stopped reimbursing certain benefits, as mandated by SIPC, to all expatriate employees, including Zhang. Zhang Dep. at 98:12-99:7, 103:14-104:5; Corporate Rep. Dep. at 74:4-77:4, 156:19-157:17 & ex. 58. After Zhang filed her EEOC charge, Tiptop attempted to pay Zhang's requested expense reimbursements, but Zhang refused to accept the checks. Zhang Dep. at 99:17-101:2 &

ex. 6.

10.     Zhang filed her first EEOC charge on June 25, 2015, and informed Tiptop about the charge the next day.  *Id.* at 30:24-31:4, 116:2-5.  At some point before Zhang began her leave in July 2015, Wang commented to other Chinese expatriate employees that they might not receive bonuses because of Zhang's violation of China's One-Child Policy[3] and refusal to comply with SIPC's rotation notice.  Feng Dep. at 132:9-135:19.  SIPC, not Tiptop, decided bonuses for Chinese expatriate employees.  See id. at 131:8-132:8; Zhang Dep. at 74:24-75:4, 75:19-25.  Neither Wang, Xiang, nor Feng instructed anyone at Tiptop to avoid or isolate Zhang, although Wang told other Chinese expatriate employees that Zhang had filed an EEOC charge against Tiptop and to be careful about what they said around her.  Wang Dep. at 20:1-21:18; Xu Dep. at 32:25-33:20; Feng Dep. at 146:1-148:2, 171:12-25.

**D.     Zhang's Paid Leave**

11.     Zhang delivered her second child in July 2015.  Zhang Dep. at 79:13-15.  Although non-SIPC employees at Tiptop receive only unpaid leave, Zhang, as an SIPC expatriate employee, received paid maternity leave according to Chinese law.  Feng Dep. at 91:25-93:14.  Tiptop allowed Zhang to take sick leave, annual leave, maternity leave, and an extended leave beyond that authorized by Chinese law—from July 6 to December 31, 2016.  Corporate Rep. Dep. at 85:1-86:17, 91:8-92:8.

---

[3]     The CPC issued China's One-Child Policy which limited each family to one child with narrow exceptions.  Compl. ¶ 9.

**E.     Zhang's Return to Work and Voluntary Resignation**

12.     On January 4, 2016, when Zhang returned to work following her nearly-six-month leave-of-absence, Wang offered her the IT Manager position—a higher position than Senior Accountant—because he thought she would prefer not to report to Xiang, whom she had accused of having committed financial improprieties. Zhang Dep. at 136:18-143:19 & ex. 9. Zhang initially accepted the new position but changed her mind the same day, stating that she wanted to remain in the Finance Department. *Id.* at 136:18-25; Feng Dep. at 189:4-25. Wang respected Zhang's wishes and did not move her to a new role. Zhang Dep. at 141:8-22; Feng Dep. at 189:4-25.

13.     After Zhang's return, Wang gave her an assignment to analyze certain discrepancies between budgeted and actual expenses with respect to procurement and acquisition. Zhang Dep. at 150:4-22. Zhang completed that assignment on January 21, 2016. *Id.* at 150:23-25.

14.     The next day, less than three weeks after she had returned to work, Zhang told Feng that she was thinking about resigning. *Id.* at 154:12-17. Feng urged her not to do so. *Id.* at 154:18-155:2. Nonetheless, Zhang sent Wang an email titled "Separation Letter." *Id.* at 155:10-25 & ex. 11. Wang, who was traveling to China, responded on January 24, 2016, encouraging Zhang to continue her employment with Tiptop. *Id.* at 157:4-158:12 & ex. 12. Because Zhang did not reply and failed to report to work for two days following Wang's response, Tiptop accepted her resignation effective January 22, 2016. *Id.* at 159:19-162:15 & ex. 13. Although Wang invited Zhang to provide specific information about the alleged discriminatory incidents about which she

complained in the "Separation Letter" so Tiptop could investigate, Zhang did not do so. *Id.* at 157:4-158:12, 163:6-13 & ex. 13. Zhang never returned, or attempted to return, to work at Tiptop. *Id.* at 162:7-163:24.

**F.    The EEOC's Dismissal of Zhang's Discrimination Charges**

15.    Zhang filed charges of discrimination against Tiptop and SIPC with the EEOC in June 2015 (amended in July 2015) and February 2016. *Id.* at 30:24-31:4; Certified EEOC Records (attached as ex. F). In her charges, she claimed that Tiptop and SIPC discriminated against her based on gender, national origin, and disability, subjected her to a hostile work environment, retaliated against her, and constructively discharged her. *See* Certified EEOC Records. Unable to find a legal violation, the EEOC dismissed Zhang's charges on June 29, 2016. *See id.* By letter dated June 21, 2016, the EEOC notified Zhang that it would dismiss her charges because, among other reasons, "the EEOC lacks jurisdiction over the policies of Sinopec because it is not located in the United States or its territories." *Id.*

## IV.    STANDARD OF REVIEW

A movant is entitled to summary judgment if the record establishes that "there is no genuine issue as to any material fact." FED. R. CIV. P. 56(c). Facts are material only if they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material factual dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . ." *Id.* To defeat summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Burger King v.*

*Rudzewicz*, 471 U.S. 462, 474–78 (1985).  Once the moving party has made an initial showing that no evidence supports the nonmoving party's case, the opposing party must come forward with competent summary-judgment evidence of the existence of a genuine dispute of material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

## V.   ARGUMENT AND AUTHORITIES

**A.    Binding Tenth Circuit authority establishes that, as a matter of law, Zhang cannot hold Tiptop liable for SIPC's alleged discriminatory acts because Title VII does not cover SIPC.**

Zhang notably did not sue SIPC; yet she seeks to hold Tiptop liable for SIPC's conduct.  But the EEOC unambiguously explained why it dismissed her discrimination charges:  the EEOC has no "jurisdiction over the actions and policies of S[IPC] because it is not located in the United States or its territories."  Certified EEOC Records.  Indeed, Title VII "shall not apply with respect to the foreign operations of an employer that is a foreign person not controlled by an American employer."  42 U.S.C. § 2000e-1(c)(2).

Zhang admits that SIPC is a Chinese company ultimately owned and controlled by the Chinese government and does not do business in the United States.  Zhang Dep. at 9:6-10, 51:8-11.  And Tiptop, as an SIPC subsidiary, does not have the right, or ability, to control SIPC.  *Id.* at 40:21-41:11; Corporate Rep. Dep. at 10:22-11:2, 16:23-17:6, 22:12-24:21, 53:19-54:13.

Binding Tenth Circuit authority confirms that an agent, as a matter of law, cannot be held liable for its principal's purportedly discriminatory acts absent separate evidence of discriminatory intent.  *See Brownlee v. Lear Siegler Mgmt. Servs. Corp.*, 15 F.3d 976,

977-78 (10th Cir. 1994).  In *Brownlee*, Lear Siegler Management Service Corp. ("Lear")

contracted with the Royal Saudi Air Force ("RSAF") to provide services.  *Id.* at 977.

Lear employed the plaintiffs, who both worked on the RSAF project.  *Id.*  The plaintiffs

claimed that RSAF directed Lear to terminate their assignment because of their age and

that Lear should be liable for RSAF's discriminatory conduct because "agency principles

allow them to impute RSAF's alleged discriminatory intent to Lear because Lear acted at

the direction or compulsion of the RSAF . . . ."  *Id.* at 978.  The Tenth Circuit rejected the

plaintiffs' argument:

> While a principal's *status as an employer* can be attributed to its agent to
> make the agent statutorily liable for *his own* . . . discriminatory conduct, . . .
> we know of no authority for imputing a principal's *discriminatory intent* to
> an agent to make the agent liable for his otherwise neutral business
> decision.

*Id.*  Thus, although "discriminatory business practices of an agent may be imputed back

to a principal to render the principal liable for its agent's statutory violations, . . . [the

Tenth Circuit has] found no authority for imputing statutory liability in the opposite

direction, from a culpable principal to an innocent agent."[4]  *Id.*

Here, Zhang claims the following actions constitute discrimination:

- The rotation notice issued to Zhang (that SIPC ultimately withdrew)
  requiring her to return to China;

- SIPC's alleged threat not to pay bonuses to Tiptop expatriate employees
  because of Zhang's violation of China's One-Child Policy;

- Being told she had violated China's One-Child Policy;

---

[4]     Another federal appellate court approved *Brownlee*'s rejection of "respondeat
inferior" liability in employment cases.  *See, e.g.*, *Coleman v. Hous. Indep. Sch. Dist.*,
113 F.3d 528, 535 (5th Cir. 1997).

- Being encouraged to resign her employment if she refused to return to China;

- The decision to stop expense reimbursements; and

- The demotion from Financial Manager to General Accountant.

Compl. ¶¶ 14-18.

Zhang concedes that SIPC made the decision to rotate her back to China and that Tiptop could not control that decision.[5] *See* Zhang Dep. at 41:4-11. Indeed, SIPC's policy, not Tiptop's policy, required Zhang to return to China. *See id.* at 49:1-5, 61:19-24. In addition, the undisputed evidence establishes that SIPC, not Tiptop, decided bonuses for Chinese expatriate employees. *See id.* at 74:24-75:4, 75:19-25; Feng Dep. at 131:8-132:8. Further, as Zhang admits, China's One-Child Policy applied to her only because she was an SIPC employee. *See id.* at 39:15-17.

Although Zhang claims that various Tiptop employees encouraged her to resign because of her pregnancy and violation of China's One-Child Policy, those discussions all occurred during conversations about SIPC's decision to rotate Zhang back to China. *See id.* at 37:2-49:5, 50:23-7, 53:25-54:13, 197:13-16 & exs. 2-3. The Tiptop employees told Zhang that Tiptop could not do anything about SIPC's decision, but they discussed various options with Zhang, including the possibility that Zhang could resign as an SIPC employee and seek re-employment as a local Tiptop employee. *See id.* at 40:21-41:7, 50:23-51:7; Feng Dep. at 102:14-104:21. Those conversations show no discriminatory

---

[5]    Zhang admittedly suffered no damages from SIPC's alleged discrimination because SIPC rescinded the rotation notice and she ultimately did not transfer back to China. *See* Zhang Dep. at 62:10-12; Corporate Rep. Dep. at 82:15-83:16 & ex. 39.

intent by Tiptop and instead demonstrate that Tiptop attempted to assist Zhang after its principal—SIPC—ordered Tiptop to comply with certain decisions.  *See* Zhang Dep. at 40:21-41:7, 50:23-51:7; Feng Dep. at 102:14-104:21.

Further, the directive to stop and request repayment of certain expense reimbursements originated from SIPC and applied to all Tiptop expatriate employees. Corporate Rep. Dep. at 156:19-157:17 & ex. 58.  Tiptop though treated Zhang more favorably than similarly-situated employees because it did not require her to repay prior expense reimbursements while others had to do so.  Zhang Dep. at 99:17-101:2 & ex. 6. Finally, SIPC, not Tiptop, decided to demote Zhang to the position of General Accountant from Financial Manager.  *See id.* at 109:1-110:18; Feng Dep. at 219:13-15.

Because, under Tenth Circuit law, Zhang cannot hold Tiptop liable for SIPC's allegedly discriminatory decisions, the Court should grant Tiptop's motion for judgment as a matter of law on all of Zhang's Title VII claims.  *See Brownlee*, 15 F.3d at 977-78.

**B.**    **Zhang's national-origin discrimination claim fails as a matter of law because SIPC based the decision on Zhang's immigration status and not her national origin.[6]**

Title VII prohibits discrimination on the basis of "national origin."  42 U.S.C. § 2000e-2(a)(1).  Zhang alleges that Tiptop discriminated against her because of her Chinese national origin when it demoted her from the position of Financial Manager to General Accountant.  Compl. ¶¶ 16, 28.  Zhang may establish discrimination either by direct evidence or by following the burden-shifting framework of *McDonnell Douglas*

---

[6]    As discussed above, SIPC—not Tiptop—decided to demote Zhang.  *See* Zhang Dep. at 109:1-110:18; Feng Dep. at 219:13-15.  Because Tiptop did not demote Zhang and did so only at SIPC's direction, Zhang cannot hold Tiptop liable for her demotion.

*Corp. v. Green,* 411 U.S. 792 (1973).  "Direct evidence of discrimination is evidence which, if believed, proves that the decision in the case at hand was discriminatory—and does so without depending on any further inference or presumption." *Cinnamon Hills Youth Crisis Ctr., Inc. v. Saint George City,* 685 F.3d 917, 919 (10th Cir. 2012).  There is no direct evidence that Tiptop demoted Zhang because of her Chinese national origin.

To set forth a prima facie case of discrimination under *McDonnell Douglas*, Zhang must establish that:  (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) she was treated less favorably than others not in the protected class.  *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 531 (10th Cir. 1998).  Zhang cannot make out a prima facie case because she cannot show that her national origin—as opposed to immigration status—played any role in the demotion decision.  In addition, Zhang has no evidence that SIPC's stated motive was a pretext for national-origin discrimination.

Title VII does not prohibit discrimination based on citizenship or immigration status.  *See Espinosa v. Farah Mfg. Co.*, 414 U.S. 86, 94-96 (1973).  Indeed, the U.S. Supreme Court specified that "[a]liens are protected from illegal discrimination under the [Civil Rights] Act, but nothing in the Act makes it illegal to discriminate on the basis of citizenship or alienage." *Id.* at 95 (emphasis added).

Courts continue to apply the Supreme Court's holding that Title VII does not prohibit discrimination based on citizenship or alienage.  *See, e.g., Cortezano v. Salin Bank & Tr. Co.*, 680 F.3d 936, 940 (7th Cir. 2012) (decision to terminate employment because employee's husband was an illegal alien did not violate Title VII because

"national origin discrimination as defined in Title VII encompasses discrimination based on one's ancestry, but not discrimination based on citizenship or immigration status"); *Guimaraes v. Supervalu, Inc.*, 674 F.3d 962, 973 (8th Cir. 2012) (statement related to a "green card process" did not show a link between an adverse employment action and national-origin discrimination because the employee was "conflat[ing] citizenship or immigration status with national origin" and "nothing in [Title VII] makes it illegal to discriminate on the basis of citizenship or alienage" (citation and internal quotation marks omitted)).

Zhang's national-origin discrimination claim had nothing to do with her Chinese national origin; rather, Zhang avers that Tiptop demoted her because she and her husband held LPR status and refused to relinquish that immigration status. *See* Compl. ¶ 16.  In addition, Zhang's attempt to combine her national-origin-discrimination claim with her gender-discrimination claim by alleging that her demotion occurred because she was a woman of Chinese descent lacks merit.  *See* Pl.'s Resp. to Mot. to Dismiss at 2-4 (Dkt. No. 16).  At the time SIPC ordered Tiptop to demote her, Zhang had not yet disclosed her pregnancy; her demotion thus could not have any link to her pregnancy.  *See* Zhang Dep. at 108:23-25.  Zhang further admits that SIPC demoted both men and women for holding permanent-resident status in another country, and although she claims that two individuals held more senior positions, she did not know whether others were similarly situated to her.  *See id.* at 110:12-18, 115:15-116:1.  Zhang therefore has no evidence Tiptop (or SIPC) treated her differently because of her national origin or gender (or both). *See, e.g.*, *Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1318 (10th Cir. 2017) (affirming

summary judgment because employee had no evidence that her employer "treated [her] differently from other similarly situated employees").

The undisputed evidence establishes that SIPC—not Tiptop—made the decision to demote Zhang because of her immigration status and that SIPC ordered demotion of male employees for the same reason. The Court therefore should grant summary judgment to Tiptop on Zhang's national-origin discrimination claim.

**C.   Tiptop did not treat Zhang differently or harass her based on gender (including pregnancy).**

Zhang alleges the following discriminatory treatment by Tiptop:

- SIPC and Tiptop told Zhang she violated China's One-Child Policy;

- SIPC and Tiptop told Zhang there would be repercussions for her pregnancy and for having violated China's One-Child Policy and that she should resign her position;

- Tiptop's President informed Chinese expatriate employees that they would not receive any bonuses because of Zhang's violation of China's One-Child Policy;

- Tiptop stopped expense reimbursements to Zhang after her pregnancy;

- Zhang received a less favorable performance evaluation; and

- Tiptop stopped giving Zhang work assignments after learning about her pregnancy.

Compl. ¶¶ 12-23. But her averments and deposition admissions establish that she has no evidence that Tiptop—as opposed to SIPC—treated her differently *because of* her gender or pregnancy or the legitimate nondiscriminatory reason for any alleged adverse employment action is pretextual.

**1.    Because China's One-Child Policy applies to both men and women, any alleged consequences from Zhang's policy violation—including statements regarding repercussions for the violation—cannot constitute discrimination as a matter of law.**

Gender-neutral conduct, no matter how unpleasant, does not support a disparate-treatment claim.[7]  *See, e.g.*, *Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1263 (10th Cir. 1998) ("If the nature of an employee's environment, however unpleasant, is not due to her gender, she has not been the victim of sex discrimination as a result of that environment."); *Houck v. City of Prairie Village*, 166 F.3d 1221, 1998 WL 792154, at *4 (10th Cir. 1998) (unpublished) (gender-neutral anti-nepotism policy not discriminatory based on gender).  Zhang's complaints about Tiptop's allegedly unlawful treatment relates to her violation of China's One-Child Policy.  Compl. ¶¶ 11-23.  Zhang further alleges that Tiptop and SIPC told her that there would be repercussions for her policy violation.  *See id.* ¶ 14.  But none of those allegations constitute discrimination based on gender or pregnancy because Zhang admits that China's One-Child Policy applies to *all* Chinese citizens.  *See* Compl. ¶ 9; Zhang Dep. at 54:22-55:24.

Zhang's situation parallels the Eighth Circuit's rejection of a plaintiff's claim that her employer demoted and constructively discharged her because she was a "new mom" and "was being given a position 'for a new mom to handle.'"  *Piantanida v. Wyman Ctr., Inc.*, 116 F.3d 340, 342 (8th Cir. 1997).  The court there concluded that "an individual's choice to care for a child is not a 'medical condition' related to childbirth or pregnancy"

---

[7]    Although a facially-neutral policy could have an unlawful disparate impact on one gender, Zhang did not charge or plead a disparate-impact claim and has no evidence that China's One-Child Policy disproportionately affected women.

but instead "is a social role chosen by all new parents who make the decision to raise a child."  *Id.*  Because both men and women may become new parents and the role would cover both adoptive and birth parents, the plaintiff could not sustain a pregnancy-discrimination claim.  *See id.*

Here, Zhang admits that China's One-Child Policy applies to all "couples" (*i.e.*, men and women).  Zhang Dep. at 54:22-55:24.  She further avers that China's One-Child Policy applies to "limit the great majority of *family units* in the country to one child each" and that the Chinese government "called upon *all* to adhere to the one-child policy." Compl. ¶ 9 (emphasis added).  The accusation that Zhang violated a gender-neutral policy—which was a part of Chinese law to which she was subject as a Chinese citizen (and her SIPC contract)—and any statements regarding repercussions for her violation of that gender-neutral policy are not bases to conclude that Tiptop discriminated against Zhang because of her gender or pregnancy.  Indeed, Zhang points to no similarly-situated male expatriate employee with more than one child whom Tiptop treated more favorably. *See, e.g.*, *Hiatt*, 858 F.3d at 1318.  Because she has no evidence that Tiptop discriminated against her based on gender (including pregnancy), her claim fails.

> **2.     Tiptop did not treat Zhang less favorably by stopping expense reimbursements because it did so for all expatriate employees, regardless of gender.**

Zhang's complaints about stopping expense reimbursements had nothing to do with her gender or pregnancy because *no* Tiptop employees—male or female—received expense reimbursements after SIPC audited Tiptop's reimbursements to Chinese expatriates.   Zhang Dep. at 98:12-99:7, 103:14-104:5; Corporate Rep. Dep. at 74:4-77:4,

156:19-157:17 & ex. 58.   Tiptop, in fact, treated Zhang *more* favorably than similarly-situated employees because it did not require her to repay unauthorized expense reimbursements though others had to do so.   Zhang Dep. at 99:17-101:2 & ex. 6.

In addition, Zhang has no evidence that Tiptop's legitimate nondiscriminatory reason is a pretext for unlawful discrimination.   Specifically, aside from her own speculation that Tiptop's refusal to reimburse her expenses related to her pregnancy, Zhang offers nothing to controvert Tiptop's stated reason for stopping the expense reimbursements.   *See* Zhang Dep. at 98:7-99:13.   Because Tiptop's denial of reimbursements applied to all expatriate employees, including men, Zhang's discrimination claim fails.

### 3.     Zhang has no evidence that she received a less favorable performance evaluation because of her gender or pregnancy.

Zhang claims that "she was assigned an unfavorable job performance evaluation by Defendant."   Compl. ¶ 23.   Tiptop expatriate employees receive performance evaluations from their peers (other expatriate employees).   Feng Dep. at 190:12-191:15. Although Zhang's co-workers rated her more favorably in prior years, the undisputed summary-judgment evidence establishes that Zhang had worked long hours during those years, which her co-workers considered in their performance appraisals.   *See id.* at 192:25-195:22.   In 2015, however, Zhang did not come to work early or work longer hours (and, in fact, sometimes came late and left early) and therefore received only a "meets-standards" rating.   *See id.* at 195:1-13; Wang Dep. at 30:17-31:12; Corporate Rep. Dep. at 107:7-108:11; *see also* Zhang Dep. at 93:22-94:1 (admitting that Zhang did not

know whether the her absences or tardiness impacted her performance appraisals).

Zhang has no evidence that the explanation for her having received a "meets-standards" evaluation in 2015—her failure to put forth the same efforts that she had in prior years—is a pretext for unlawful discrimination.  Although Zhang speculates that other employees gave her a lower evaluation because of her pregnancy and violation of China's One-Child Policy, she never asked her co-workers why they gave her a lower rating.  Zhang Dep. at 93:2-5.  In addition, she "ha[d] no idea . . . whether other people could have given [her] a lower performance evaluation because before [she] went on maternity leave there was a lot of lateness or [she] missed work."  *Id.* at 93:22-94:1. Zhang's subjective belief that she received a lower performance evaluation because of her gender or pregnancy is insufficient to establish pretext.  *See Lounds v. Lincare, Inc.*, 812 F.2d 1208, 1237-38 (10th Cir. 2015) (affirming summary judgment for employer because "speculative nature of [the plaintiff's] pretext theories" failed to raise genuine issue of material fact); *Jones v. Denver Post Corp.*, 203 F.3d 748, 754 (10th Cir. 2000) ("[P]laintiff's 'mere conjecture that [her] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment.'" (citation and internal quotation marks omitted)).  Summary judgment for Tiptop is thus warranted.

> **4.     Zhang has no evidence that her work assignments diminished because of her gender or pregnancy.**

Zhang alleges that Tiptop reduced her work in approximately mid-June 2015.  *See* Compl. ¶ 19.  But the summary-judgment evidence demonstrates that Xiang, Zhang's

manager, limited Zhang's responsibilities and denied her access to financial records for a reason unrelated to Zhang's gender or pregnancy:  around that time, Zhang complained to Wang and SIPC about Xiang's purported financial improprieties.  Zhang Dep. at 18:7-20:7, 82:11-15.   Other employees who worked in Zhang's department observed that Zhang's complaints about Xiang led to his decreasing her assignments and denying her access to certain records.  *See, e.g.*, Feng Dep. at 148:9-153:22, 170:17-172:17, 181:1-182:3; Xu Dep. at 55:20-56:17.  Indeed, Zhang concedes that she does "not know" why Xiang purportedly removed work from her, denied her access to financial materials, and told Zhang's co-workers to "keep an eye on her."  *See* Zhang Dep. at 73:14-19.  Thus, Zhang admittedly has no evidence that Tiptop's stated reason for the alleged adverse actions is a pretext for unlawful discrimination.

To avoid summary judgment on her gender-discrimination claim based on the alleged work reduction, Zhang must offer evidence—not just her own speculation and conjecture—that her gender or pregnancy was a "motivating factor" in the allegedly adverse action, *i.e.*, that the nondiscriminatory reason is a pretext for unlawful discrimination.  *See, e.g.*, *Jones*, 203 F.3d at 754.  But Zhang has none and admits that she does not know why Xiang took the actions about which she complains.  *E.g.*, Zhang Dep. at 76:19-77:21 ("I don't know whether it's [Xiang's refusal to allow access to financial records] related to [pregnancy] or not."), 88:13-21 (admitting she "do[esn]'t know" why Xiang put Nana Xu in charge of the Financial Department), 97:5-10 (admitting she "do[esn]'t know what [Xiang] thought about" concerning why he was nervous about Zhang speaking with the audit team sent by SIPC to Tiptop).

Because Zhang lacks evidence—aside from her subjective belief, which is not entitled to any weight—that Xiang removed Zhang's work assignments because of her gender or pregnancy, the Court should grant Tiptop's motion for summary judgment on Zhang's gender-discrimination claim.

### 5.     Zhang's hostile-work-environment claim fails for the same reasons as her gender-discrimination claim.[8]

To prevail on a Title VII hostile-work-environment claim, Zhang must show that she was subjected to gender-based harassment "sufficiently severe or pervasive 'to alter the conditions of [her] employment and create an abusive working environment.'" *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67 (1986).  Sexual harassment is behavior "that would not occur but for the sex of the employee."  *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1537 (10th Cir. 1995) (citation and internal quotation marks omitted).  "If the nature of an employee's environment, however unpleasant, is not due to her gender, she has not been the victim of sex discrimination."  *Id.* (summary judgment on hostile-work-environment claim based on crude comments to female employee was proper because comments were unrelated to the employee's gender).

The purported gender-based actions Zhang seeks to attribute to Tiptop in support of her hostile-work-environment claim are the same as those on which she relies for her discrimination claim—comments or actions either (1) related to China's gender-neutral One-Child Policy; or (2) for which she has no evidence that her gender or pregnancy

---

[8]     Zhang alludes to "harassment" in her Complaint but fails to specify what conduct allegedly created a hostile work environment.  In an abundance of caution, Tiptop nonetheless addresses that claim, which likewise fails because Zhang has no evidence that any alleged hostile work environment was because of her gender or pregnancy.

motivated them.  Accordingly, summary judgment on Zhang's hostile-work-environment claim is proper.

**D.      Zhang's retaliation claim fails.**

To establish a retaliation claim, Zhang bears the burden to prove "(1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action."  *Vaughn v. Villa*, 537 F.3d 1147, 1150 (10th Cir. 2008).  Assuming Zhang could establish a prima facie case, which she cannot, the burden then shifts to Tiptop to proffer a legitimate nondiscriminatory reason for taking the action.  *Stover v. Martinez*, 382 F.3d 1064, 1071 (10th Cir. 2004) "If the employer provides a legitimate, nondiscriminatory justification for the action, the burden shifts back to the employee to provide evidence showing that the employer's proffered reason is a pretext for discrimination." *Id.*  Zhang cannot show the third element of a prima facie case—a causal connection—or that Tiptop's explanation for the alleged adverse employment actions is a pretext for unlawful retaliation.

Zhang first complains about her demotion.  But the demotion, which resulted from her LPR status, could not be retaliatory because it predated Tiptop's knowledge of Zhang's second pregnancy and any other complaints.  *See* Zhang Dep. at 11:10-15, 16:3-9; *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1204 (10th Cir. 2006) (plaintiff could not show retaliation where "the company's concerns about tardiness and 'attitude' . . . predate [plaintiff's] internal complaint").

Zhang next complains about SIPC's notice that directed her to return to China due

to her pregnancy. *See* Compl. ¶ 13. But, as explained earlier, Zhang may not impute SIPC's alleged conduct to Tiptop. In addition, Zhang suffered no adverse action despite her refusal to return to China, as she remained in her same position at her regular pay rate. Zhang Dep. at 62:10-13; *see Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) ("The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm.").

Zhang further contends that Tiptop declined to reimburse her expenses after having learned about her second pregnancy. Compl. ¶ 17. But Zhang ignores that Tiptop denied reimbursement requests by *all* Chinese expatriate employees and required them to repay previous unauthorized reimbursements. Zhang Dep. at 98:12-99:7, 103:14-104:5; Corporate Rep. Dep. at 74:4-77:4, 156:19-157:17 & ex. 58. And Tiptop treated Zhang *more* favorably by not requiring her to repay expense reimbursements and offering—after Zhang filed her EEOC charge—to pay her expense-reimbursement requests. Zhang Dep. at 99:17-101:2 & ex. 6.

Further, Zhang's complaint that her performance evaluations were retaliatory cannot succeed because Zhang's co-workers—not her supervisor or a member of Tiptop management—evaluated her performance. *See* Feng Dep. at 190:12-191:15. The evidence conclusively demonstrates that in 2015, Zhang did not come to work early or work longer hours (and, in fact, sometimes came late and left early) and therefore received only a "meets-standards" rating. *See id.* at 195:1-13; Wang Dep. at 30:17-31:12; Corporate Rep. Dep. at 107:7-108:11. As described above, Zhang has no evidence that the explanation for her having received a "meets-standards" evaluation in 2015 is a

pretext for retaliation and concedes that she "ha[s] no idea . . . whether other people could have given [her] a lower performance evaluation because before [she] went on-maternity leave there was a lot of lateness or [she] missed work." Zhang Dep. at 93:22-94:1.

In addition, Zhang complains that Xiang's June 30, 2015 email to Financial Department employees that delegated work responsibilities during Xiang's vacation was retaliatory because it did not reference her. *See* Compl. ¶ 22. But Zhang conceded that she was scheduled to deliver her child while Xiang was out. *See* Zhang Dep. at 87:18-88:10. She also admits that she does not know whether Xiang's failure to reference her name in his June 30, 2015 email was because she had complained about his financial improprieties. *Id.* at 88:13-21. Zhang's speculation about a motive is insufficient to establish that Tiptop's legitimate, nondiscriminatory reason was pretext for unlawful retaliation. *See Jones*, 203 F.3d at 754.

To the extent Zhang complains about any conduct that occurred with respect to work assignments, lack of access to financial records, or comments made by Xiang about reporting Zhang's attendance, the testimony indicates that such treatment occurred because Zhang had accused Xiang of improper expense reimbursements and *not* because of Zhang's EEOC charge or other protected activity. *See, e.g.*, Feng Dep. at 148:9-153:22, 170:17-172:17, 181:1-182:3; Xu Dep. at 55:20-56:17. Accordingly, Zhang's retaliation claims lack merit, and the Court should grant Tiptop's motion for summary judgment on those claims.

**E.    Zhang voluntarily resigned her employment with Tiptop.**

Under well-established Tenth Circuit, "[a] constructive discharge occurs when an

employer, through unlawful acts, makes working conditions so intolerable that a reasonable person in the employee's position would be forced to resign." *Exum v. U.S. Olympic Committee*, 389 F.3d 1130, 1135 (10th Cir. 2004).  The constructive discharge must be because of the employer's "illegal discriminatory acts." *See Penry*, 155 F.3d at 1264. "The question is not whether working conditions at the facility were difficult or unpleasant"; "[r]ather, Plaintiff must show that, at the time of h[er] resignation, h[er] employer did not allow h[er] to make a free choice regarding h[er] employment relationship." *Id.* (citation and internal quotation marks omitted).  An employee's subjective beliefs are irrelevant. *See Yearous v. Niobrara Cty. Mem'l Hosp.*, 128 F.3d 1351, 1356 (10th Cir. 1997).  And Zhang's burden to establish constructive discharge "is substantial." *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 805 (10th Cir. 2007).  A showing of an adverse employment action is "not necessarily sufficient" because such an adverse action may not establish *objectively* intolerable conditions. *Id.*

For instance, the Tenth Circuit found no constructive discharge where an employer made openly hostile remarks about an employee's Iranian nationality, ordered the employee to take a polygraph test because of his national origin, mistreated the employee at company events, and asked the employee to get rid of other Iranians. *See Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1385-86 (10th Cir. 1991).

The court likewise considered a resignation voluntary where the employee alleged that her supervisor "was intentionally humiliating her in front of coworkers," asked her to keep track of her daily activities in 15-minute intervals, and openly criticized her. *Turnwall v. Trust Co. of Am.*, 146 F. App'x 983, 985 (10th Cir. 2005).  "While [the

plaintiff] may have been personally affronted, not every unhappy employee has an actionable claim of constructive discharge." *Id.* at 988 (citation and internal quotation marks omitted).

Similarly, the Tenth Circuit affirmed summary judgment to an employer on a constructive-discharge claim despite the employee's allegations that (1) he received a negative performance evaluation following a complaint about allegedly unlawful employment practices; (2) his complaints about the allegedly unlawful employment practices "were not seriously considered, and instead, he was accused of being the problem"; (3) his boss's supervisor told him "I want you out" of the company; and (4) he was told that he would be put on a performance improvement plan. *Saville v. Int'l Bus. Machines Corp.*, 188 F. App'x 667, 670 (10th Cir. 2006). The court noted that negative performance reviews alone are not "objectively intolerable conditions." *Id.* In addition, it observed the "employer's offer of an alternative to quitting is not consistent with constructive discharge," and the employee could have chosen to remain employed and undertake the performance improvement plan. *See id.*

Contrary to her assertions, Zhang had complete freedom regarding her employment relationship and was not compelled to resign by objectively intolerable working conditions. Zhang retained the same title and salary following her return to work after her nearly six-month leave. *See* Feng Dep. at 188:21-189:3. Although Zhang claimed that she did not receive work assignments, Wang gave Zhang at least one assignment upon her return to work. Zhang Dep. at 150:4-13. In addition, she did not request any work assignments, nor did she attend staff meetings to which she was invited.

*Id.* at 146:3-10, 149:9-18.

Zhang further admits that many co-workers, including Feng, did not ostracize or shun her.  *Id.* at 70:11-73:13, 151:21-152:2.  And although she claims others ignored her, she has no evidence aside from her own subjective beliefs, that the alleged treatment was due to her gender, pregnancy, or for having filed an EEOC charge and not because she had reported Xiang's alleged financial improprieties.

Nor does Wang's offer to reassign Zhang to IT Manager following her maternity leave justify a constructive-discharge finding.  The new position would have constituted a promotion to manager from Zhang's then-existing role.  Deposition of Jeff Leonard at 31:2-13 (attached as ex. G).  When Zhang opted to remain in the Finance Department, Wang respected her wishes.  Feng Dep. at 189:4-25.  Indeed, Wang offered Zhang the opportunity to transfer only in an attempt to remedy Zhang's discomfort by moving her away from Xiang—about whom Zhang had accused of wrongdoing.  Zhang Dep. at 136:18-143:19 & ex. 9; *see Buchanan v. Sherrill*, 51 F.3d 227, 229 (10th Cir. 1995) (affirming no constructive discharge where the employee rejected a transfer out of the objectionable workplace).  Zhang's decision to remain in Xiang's department was hers alone.  Feng Dep. at 189:4-25.

Finally, Tiptop's response to Zhang's resignation overtures counsels against a constructive-discharge finding.  Both Feng and Wang encouraged Zhang to return to work and continue her employment with Tiptop.  Zhang Dep. at 154:18-155:2.  But Zhang neither responded nor reappeared at work; accordingly, after several days, Tiptop accepted her resignation.  *Id.* at 159:19-162: 24.   In sum, there is *no* evidence that

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT — Page 27**

Zhang's working conditions were objectively "intolerable" when she tendered her resignation; therefore, the Court should hold, as a matter of law, that Tiptop did not constructively discharge Zhang and dismiss that claim.[9]

**F.      Zhang's admission that SIPC would have transferred her back to China no later than four years after she began working for Tiptop cuts off her claimed damages.**

Zhang cannot recover back pay beyond June 2016 because she admits she thereafter would not have worked for Tiptop as an expatriate employee. Zhang Dep. at 43:2-17. SIPC had a rotation policy applicable to all employees that required rotation after "3+1" years. Corporate Rep. Dep. at 150:2-151:12 & ex. 57. Zhang concedes that, at the expiration of four years, SIPC would have rotated her back to China or assigned her to another country. Zhang Dep. at 43:2-17.

Zhang began working for Tiptop in June 2012. *Id.* at 27:11-16. Applying SIPC's rotation policy, Zhang indisputably would have rotated back to Beijing no later than June 2016. *See id.* at 43:2-17. The Court therefore should limit Zhang's back pay to the period from her January 22, 2015 resignation to June 30, 2015—the end of her "3+1" rotation. *See, e.g.*, *EEOC v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1580 (7th Cir. 1997) (reversing back-pay award because the employee "would have quit anyway" and the award impermissibly would have "place[d] her in a better position than she would have

---

[9]      The Court should not consider Zhang's allegations that preceded Zhang's nearly six-month leave because the passage of time between the acts about which the plaintiff complains and the resignation further supports a finding that Zhang voluntarily resigned. *See, e.g.*, *Sandoval v. City of Boulder*, 388 F.3d 1312, 1325-26 (10th Cir. 2004) ("Sandoval . . . fails to explain how her humiliation resulting from the EC's investigation contributed to her alleged constructive discharge nearly a year later . . . .").

occupied had the discrimination not occurred"); *Ayala v. Summit Constructors, Inc.*, 788 F. Supp. 2d 703, 725 (M.D. Tenn. 2011) (limiting back pay under Title VII because the employer had not hired anyone in plaintiff's position to perform any jobs after the two-and-a-half month project ended and "[i]t would distort the goal of making [the plaintiff] 'whole' to provide him back pay for a job he could not possibly have held for longer than the two-and-a-half month project for which he might have been rehired").

**G.      Because Zhang's Title VII claims fail, her OADA claims necessarily fail.**

Courts consistently have held that if a plaintiff's Title VII claims fail, the plaintiff's OADA claims likewise fail.  *See Barzellone v. City of Tulsa*, 210 F.3d 389, 2000 WL 339213, at *5 (10th Cir. 2000) (unpublished); *see also Cunningham v. Skilled Trade Servs., Inc.*, No. CIV-15-803-D, 2015 WL 6442826, at *3 (W.D. Okla. Oct. 23, 2015) ("This Court has previous noted that claims under the OADA are evaluated using the same standards as claims under Title VII, and a claim that fails under Title VII will also fail under the OADA."); *Forrester v. Apex Remington, Inc.*, No. 14-CV-0306-CVE-PJC, 2015 WL 1499217, at *9 (N.D. Okla. Apr. 1, 2015) ("The Tenth Circuit has determined that a plaintiff's OADA claim fails if his federal discrimination claims fail."); *Roberts v. Indep. Sch. Dist. No. 12*, No. CIV-13-1245-HE, 2014 WL 1347379, at *2 (W.D. Okla. Apr. 3, 2014) ("Because the protections provided by the OADA are co-extensive with the protections provided by federal law under the ADA, a plaintiff's OADA claim fails 'if her federal discrimination claims fail." (citation and internal quotation marks omitted)).  The Court thus should grant Tiptop's motion for summary judgment on all of Zhang's OADA claims.

## IV.  CONCLUSION

For the reasons set forth above, the Court should grant Tiptop's motion for summary judgment on all of Zhang's claims, enter judgment in Tiptop's favor, and award Tiptop its costs.

Dated:  January 8, 2018.

Respectfully submitted,

*/s/ Marc H. Klein*
Marc H. Klein
 Texas Bar No. 11563012
 Pro hac vice

J. Meghan Nylin
 Texas Bar No. 24070083
 Pro hac vice

THOMPSON & KNIGHT LLP
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas  75201
Telephone:  (214) 969-1700
Facsimile:  (214) 969-1751
E-mail: marc.klein@tklaw.com
E-mail: meghan.nylin@tklaw.com

Timothy J. Bomhoff
 State Bar No. 13172

Paige H. Good
  State Bar No. 31595

MCAFEE & TAFT
Tenth Floor
Two Leadership Square
211 N. Robinson
Oklahoma City, OK 73102-7103
(405) 235-9621 office
(405) 235-0439 fax
E-mail: tim.bomhoff@mcafeetaft.com
E-mail: paige.good@mcafeetaft.com

ATTORNEYS FOR DEFENDANT
TIPTOP ENERGY
PRODUCTION U.S., LLC

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing was served by the Court's electronic filing system on this 8th day of January, 2018 on all counsel of record as listed below:

J. Kelly Work
105 N. Hudson, Suite 304
Oklahoma City, Oklahoma 73102
jkwork225@gmail.com


_____ */s/ Marc H. Klein* _____
Marc H. Klein