IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JIDONG ZHANG, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CASE NO. CIV-16-1044-SLP |
| | § | |
| TIPTOP ENERGY PRODUCTION | § | |
| U.S., LLC, a limited liability company, | § | |
| | § | |
| Defendant. | | |

## REPLY IN SUPPORT OF DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

Defendant Tiptop Energy Production U.S., LLC ("Tiptop") submits this reply in

support of its motion for summary judgment on all of Plaintiff Jidong Zhang's claims.

<u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..................................................................................................iii

I.  INTRODUCTION ........................................................................................................ 1

II. ARGUMENT ................................................................................................................ 1

    A. Portions of Zhang's response are either unsupported by the record or are
       supported only by inadmissible statements in Zhang's affidavit. .......................... 1

    B. Contrary to Zhang's protestations, the EEOC's findings, including that it
       lacks jurisdiction over SIPC's conduct, are admissible. .......................................... 3

    C. Under binding Tenth Circuit authority, which Zhang does not refute, Tiptop
       cannot be liable for the alleged discriminatory actions that Zhang attributes
       to SIPC.......................................................................................................................... 4

    D. Zhang offers no summary-judgment evidence or authority to controvert that
       China's One-Child Policy is gender-neutral and thus cannot form the basis
       of a disparate-treatment gender-discrimination claim............................................ 6

    E. Zhang's demotion was not based on pregnancy (including gender) or
       national origin and therefore cannot form the basis of a "pregnancy-plus-
       national-origin" claim............................................................................................... 8

    F. Zhang's "pregnancy-plus-national-origin" discrimination claim likewise
       fails because Zhang's status as an SIPC employee, and not her status as a
       woman of Chinese national origin, triggered the application of SIPC's
       rotation policy and China's One-Child Policy. ....................................................... 9

    G. Zhang offers no evidence that Tiptop retaliated against her because she
       engaged in protected activity................................................................................. 10

    H. Zhang's constructive-discharge claim fails as a matter of law because she
       points to no unlawful actions after she returned from leave that would have
       caused a reasonable person to feel compelled to resign....................................... 13

    I. Zhang did not plead a breach-of-contract claim for expense reimbursements
       and therefore cannot recover them in the absence of any evidence that
       Tiptop's refusal to reimburse her was discriminatory or retaliatory..................... 15

    J. Zhang's attempt to avoid the effect of SIPC's rotation policy on her front-
       pay claim fails because SIPC applied the policy to all expatriate employees. ...... 16

III.        CONCLUSION................................................................................................... 16

# TABLE OF AUTHORITIES

## Cases

*Annett v. Univ. of Kansas*,
  371 F.3d 1233 (10th Cir. 2004)..............................................................11, 12

*Bones v. Honeywell Int'l, Inc.*,
  366 F.3d 869 (10th Cir. 2004)......................................................................5

*Brownlee v. Lear Siegler Mgmt. Servs. Corp.*,
  15 F.3d 976 (10th Cir.), *cert. denied*, 512 U.S. 1237 (1994) .......................4, 5, 6

*Cervantes v. Wal-Mart Stores, Inc.*,
  1 F. App'x 762 (10th Cir. 2001) .................................................................3, 4

*Chandler v. Roudebush*,
  425 U.S. 840 (1976) ..................................................................................3, 4

*Chen v. Holder*,
  742 F.3d 171 (4th Cir. 2014).......................................................................7

*Cortezano v. Salin Bank & Tr. Co.*,
  680 F.3d 936 (7th Cir. 2012)........................................................................8

*Equity Asset Corp. v. B/E Aerospace, Inc.*,
  388 F. Supp. 2d 1305 (D. Kan. 2005) .........................................................15

*Espinosa v. Farah Mfg. Co.*,
  414 U.S. 86 (1973) ......................................................................................8

*Guimaraes v. Supervalu, Inc.*,
  674 F.3d 962 (8th Cir. 2012)........................................................................8

*Heno v. Sprint/United Mgmt. Co.*,
  208 F.3d 847 (10th Cir. 2000).....................................................................14

*Hill v. St. Louis Univ.*,
  123 F.3d 1114 (8th Cir. 1997)......................................................................10

*Houck v. City of Prairie Village*,
  166 F.3d 1221, 1998 WL 792154 (10th Cir. 1998) ........................................6

*In re Grandote Country Club Co.*,
  252 F.3d 1146 (10th Cir. 2001)....................................................................2

*Jones v. Denver Post Corp.*,
  203 F.3d 748 (10th Cir. 2000)........................................................................12

*Juarez v. Utah*,
  263 F. App'x 726 (10th Cir. 2008) ...............................................................12

*Lounds v. Lincare, Inc.*,
  812 F.3d 1208 (10th Cir. 2015).....................................................................12

*Mesnick v. General Elec. Co.*,
  950 F.2d 816 (1st Cir. 1991) .........................................................................16

*Nulf v. Int'l Paper Co.*,
  656 F.2d 553 (10th Cir. 1981)..........................................................................3

*Penry v. Fed. Home Loan Bank of Topeka*,
  155 F.3d 1257 (10th Cir. 1998).......................................................................6

*Sotunde v. Safeway, Inc.*,
  716 F. App'x 758 (10th Cir. 2017) ...........................................................13, 14

*Tellez v. City of Belen*,
  560 F. App'x 812 (10th Cir. 2014) ...............................................................12

*Trujillo v. N.M. Dep't of Corrs.*,
  182 F.3d 933, 1999 WL 194151 (10th Cir. Apr. 8, 1999) ............................14

*United States v. City of Las Cruces*,
  289 F.3d 1170 (10th Cir. 2002)........................................................................2

*Williams v. Rice*,
  983 F.2d 177 (10th Cir. 1993)..........................................................................9

*Xue v. Ashcroft*,
  98 F. App'x 652 (9th Cir. 2004) ......................................................................7

*You v. Gonzales*,
  201 F. App'x 851 (2d Cir. 2006) .....................................................................7

## Statutes

42 U.S.C. § 2000e-2(a)......................................................................................10

## Rules

FED. R. CIV. P. 56(c)(4) .................................................................................................... 2

FED. R. EVID. 803(8) ......................................................................................................... 4

## I.    INTRODUCTION

Zhang attempts to obscure the dispositive legal issues by including immaterial or unsupported factual allegations and largely relying on inadmissible affidavit testimony. Her plea that the Court ignore the EEOC's dismissal of her claims and its rationale for doing so is legally incorrect because the EEOC's findings are admissible.  And because Zhang concedes that SIPC—a non party owned by the Chinese government—took the alleged discriminatory actions on which she bases her claims, Tiptop cannot be liable under binding Tenth Circuit authority that Zhang does not refute.  Zhang further offers no evidence that China's One-Child Policy applies only to women, so that gender-neutral policy cannot support a disparate-treatment claim.  Finally, Zhang raises no genuine issues of material fact as to retaliation or constructive discharge, rendering summary judgment proper on all of her claims.

## II.    ARGUMENT

**A.    Portions of Zhang's response are either unsupported by the record or are supported only by inadmissible statements in Zhang's affidavit.**

The factual portion of Zhang's response contains several conclusory and speculative statements about Tiptop's or SIPC's actions, unsupported by any citation to the summary-judgment record.  For instance:

- "Plaintiff Zhang's demotion from Financial Manager of Tiptop to Accounting Supervisor was based on her national origin.  The demotion was done by Tiptop at the direction of SIPC.  It was directed at her based on her Chinese national origin.  Defendant's stated reason for the demotion is pretextual."  Resp. at 5 (Dkt. No. 64) (containing no record citations).

- "The rotation policy was a guise in an attempt to shield Tiptop from legal liability for pregnancy discrimination."  *Id.* at 11 (containing no record citation).

**REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT — Page 1**

- "The transfer was being ordered, however, because of Zhang's pregnancy with her second child, said to be in violation of China's one-child policy." *Id.* at 12 (containing no record citation).

- "This mistreatment of Zhang by her direct supervisor directly followed his learning of Zhang's pregnancy, along with the rest of Tiptop's management, which was considered by them to be in violation of China's one-child policy." *Id.* at 15 (containing no record citation).

In the absence of competent summary-judgment evidence to support Zhang's wishful leaps, the Court should ignore them. *See In re Grandote Country Club Co.*, 252 F.3d 1146, 1153 (10th Cir. 2001) (affirming summary judgment against a party because it was unsupported by "competent Rule 56 evidence").

In addition, Zhang relies heavily on her own affidavit that contains inadmissible testimony and to which Tiptop has filed separate objections. *See* Tiptop's Objections to Plaintiff's Affidavit (Dkt. No. 67). Specifically, Zhang's affidavit: (i) contains inadmissible legal conclusions; (ii) offers testimony on areas about which she has no personal knowledge; and (iii) includes inadmissible hearsay. *See id.* Zhang may not rely on inadmissible evidence to create a fact issue. *See* FED. R. CIV. P. 56(c)(4); *see also In re Grandote Country Club Co.*, 252 F.3d at 1153.

Zhang also never cites to specific portions of her 15-page affidavit. *See generally* Resp. (Dkt. No. 64) (citing only "Aff. of Zhang, Ex. 4" without pinpoint citations). The Court and Tiptop need not sift through it to locate support for Zhang's arguments. *See United States v. City of Las Cruces*, 289 F.3d 1170, 1186 (10th Cir. 2002) (declining to "sift through the record to find support" for a party's contentions (citation and internal quotation marks omitted)).

**REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT — Page 2**

**B.**    **Contrary to Zhang's protestations, the EEOC's findings, including that it lacks jurisdiction over SIPC's conduct, are admissible.**

The EEOC dismissed Zhang's charges of discrimination in part because it lacked jurisdiction over SIPC's conduct.  *See* Excerpts from Certified EEOC Record (Dkt. No. 32-6).  In an attempt to dissuade the Court from reaching the same conclusion, Zhang incorrectly contends that the EEOC's reasoning is "irrelevant" and "inadmissible hearsay."  Resp. at 22 (Dkt. No. 64).  But courts, including the U.S. Supreme Court and Tenth Circuit, have expressly authorized the admission of EEOC determinations as evidence.  *See Chandler v. Roudebush*, 425 U.S. 840, 863 n.39 (1976); *Nulf v. Int'l Paper Co.*, 656 F.2d 553, 563 (10th Cir. 1981).  Indeed, the Tenth Circuit noted that "[a]n EEOC report can be *highly probative of the ultimate issues involved*," and "[t]o ignore the manpower and resources expended on the EEOC investigation and the expertise acquired by its field investigators in the area of discriminatory employment practices would be wasteful and unnecessary."  *Cervantes v. Wal-Mart Stores, Inc.*, 1 F. App'x 762, 765 (10th Cir. 2001) (citation and internal quotation marks omitted).

In addition, the EEOC's findings are not inadmissible hearsay.  Tiptop produced an attestation by the custodian of records for the EEOC's St. Louis District Office stating that the documents produced are true and correct copies of the EEOC's file.  *See* Excerpts from Certified EEOC Record (Dkt. No. 32-6).   The EEOC's determination thus is admissible under the public-records exception to the hearsay rule, and the Court should consider the EEOC's analysis in dismissing Zhang's discrimination charge when ruling on Tiptop's summary-judgment motion.  FED. R. EVID. 803(8); *Cervantes*, 1 F. App'x

at 765-66 (citing *Chandler*, 425 U.S. at 863 n.39, for the proposition that "administrative findings regarding claims of discrimination are admissible" under "the public records and investigatory file exception to the hearsay rule").

**C.     Under binding Tenth Circuit authority, which Zhang does not refute, Tiptop cannot be liable for the alleged discriminatory actions that Zhang attributes to SIPC.**

Under longstanding Tenth Circuit law, which Zhang neither addresses nor refutes, a plaintiff may not hold an agent liable for its principal's purportedly discriminatory acts absent separate evidence of discriminatory intent.  *See Brownlee v. Lear Siegler Mgmt. Servs. Corp.*, 15 F.3d 976, 977-78 (10th Cir.), *cert. denied*, 512 U.S. 1237 (1994).  Zhang repeatedly confirms that SIPC controls Tiptop and that SIPC ordered Zhang's demotion, issued the allegedly discriminatory rotation policy, directed Zhang to transfer back to China, and held Zhang responsible for abiding by China's One-Child Policy:

- "Tiptop is directed by SIPC and Tiptop's actions require SIPC approval." Resp. at 4 (Dkt. No. 64).
- Zhang's "demotion was done by Tiptop at the direction of SIPC."  *Id.* at 5.
- "SIPC issued the rotation policy" that Zhang claims is discriminatory.  *Id.* at 9.
- "SIPC directed Tiptop to transfer Zhang and Wu Han (the other pregnant female employee) back to China and to stop paying their salary on July 1, 2015."  *Id.* at 9.
- "SIPC's Human Resources Manager, Yong Luo, emailed Zhang on June 2nd, 3rd, and 4th, 2015 telling her that she would be penalized for violating China's one-child policy and that all of the company leaders at Tiptop and SIPC would also be penalized for her violation."  *Id.* at 10.
- "The 3+1 rotation policy was pretextual and was issued by SIPC to Tiptop . . . ."  *Id.*
- "SIPC policies and Chinese government policies provided that Tiptop would be held responsible for the violation of the one-child policy."  *Id.* at 15.

- "On June 4, 2015, the human resources manager of SIPC sent an email to Jidong Zhang accusing her of violating China's one-child birth control policy and attaching a number of regulations specifying the violations and the punishments." *Id.* at 16.
- "SIPC requested only Chinese expatriate employees to pay back the alleged 'unauthorized benefits.'" *Id.* at 17.

Zhang complains that "Tiptop cannot escape liability for its own actions by blaming its parent SIPC." *Id.* at 27.  But by assigning liability to Tiptop for actions taken at the direction of SIPC, its parent company, Zhang seeks to hold an agent (Tiptop) responsible for its principal's (SIPC's) decisions and actions under the legal theory of *respondeat inferior*, which the Tenth Circuit rejected in *Brownlee*.  *Brownlee*, 15 F.3d at 977-78.

Zhang attempts to dodge the unavoidable effect of *Brownlee* by contending that both Tiptop and SIPC make decisions regarding bonuses.  Resp. at 27.  But she admits she has no personal knowledge as to which entity makes that decision:

Q:    Who makes the decision about the bonuses that are awarded?
A:    I think both Tiptop and SIPC.
Q:    Okay.  Do you have personal knowledge as to who makes those decisions?
A:    No.

Zhang Dep. at 74: 24-75:4 (Dkt. No. 32-1).  Zhang's speculation about bonuses cannot create a material fact issue.  *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 876 (10th Cir. 2004) ("Testimony which is grounded on speculation does not suffice to create a genuine issue of material fact to withstand summary judgment.").

Finally, Zhang incorrectly attempts to ascribe discriminatory intent to Tiptop, as opposed to SIPC, because of statements by Tiptop employees regarding resignation.  Resp. at 28.  The undisputed evidence establishes that, after discovering SIPC believed

Zhang had violated the One-Child Policy, Tiptop employees discussed various options with Zhang, including resignation from SIPC so that Zhang could continue as a local Tiptop employee whom SIPC policies did not cover.  *See* Zhang Dep. at 40:21-41:7, 50:23-51:7 (Dkt. No. (32-1) (stating that it was Zhang's understanding that Wang could not do anything to keep Zhang as a Tiptop employee because SIPC made the employment decisions); Resp. at 28-29 (Dkt. No. 64) (conceding that Wang discussed the option of her becoming a local employee); Feng Dep. at 102:14-104:21 (Dkt. No. 32-2) (Q: "And did you tell Jidong that she should resign her employment?" A: "Not she should, I only advise her, I say, in this case, if SIPC, like confirmed you broke the policy of one kid, so if I were you, I choose to resign from SIPC, then become a local employee of Tiptop."). Those attempts by Tiptop employees to offer alternatives to SIPC's orders simply are not evidence that Tiptop discriminated against Zhang.

In short, Zhang objects to actions taken or directed by SIPC—not Tiptop—and offers neither competent summary-judgment evidence to the contrary nor legal authority that makes Tiptop liable under Title VII.  Tiptop is thus entitled to summary judgment as a matter of law on Zhang's claims.  *See Brownlee*, 15 F.3d at 977-78.

**D.**    **Zhang offers no summary-judgment evidence or authority to controvert that China's One-Child Policy is gender-neutral and thus cannot form the basis of a disparate-treatment gender-discrimination claim.**

Zhang does not—because she cannot—refute binding Tenth Circuit law that gender-neutral conduct cannot support a disparate-treatment claim.  *See Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1263 (10th Cir. 1998); *Houck v. City of Prairie Village*, 166 F.3d 1221, 1998 WL 792154, at *4 (10th Cir. 1998) (unpublished).

**REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT — Page 6**

Zhang offers no *evidence* that the One-Child Policy applies only to pregnant women  and even admitted that the One-Child Policy applies to "every couple" including both the man and his wife.[1]  *See* Zhang Dep. at 54:22-55:24 (Dkt. No. 32-1).  Tiptop further, offered undisputed testimony that the One-Child Policy applies to "everybody" in China, and that at least one man resigned from SIPC because he had violated China's family-planning regulations.  *See* Feng Dep. at 270:20-271:4 (Dkt. No. 32-2).  Indeed, both Chinese women *and men* often seek asylum in the United States because of their violation of China's One-Child Policy.  *See, e.g.*, *Chen v. Holder*, 742 F.3d 171, 180-82 (4th Cir. 2014) (remanding to consider evidence offered by husband and wife in support of their identical asylum claims based on violation of China's One-Child Policy); *You v. Gonzales*, 201 F. App'x 851, 852 (2d Cir. 2006) (finding an abuse of discretion in denying Chinese man's motion to reopen asylum proceedings based on changed conditions related to China's One-Child Policy); *Xue v. Ashcroft*, 98 F. App'x 652, 654-56 (9th Cir. 2004) (remanding claim for withholding of removal filed by Chinese man based on violation of China's One-Child Policy).

Zhang's conclusory statement that Tiptop based its actions on her pregnancy and not on the gender-neutral One-Child Policy does not enable her to avoid summary judgment. *See* Resp. at 31 (Dkt. No. 64).  Indeed, Zhang's own pleading refers to the

---

[1]      Zhang's assertion that "[i]t is not a valid defense for Tiptop to assert that China's one-child policy would have also applied to males" because "only females can become pregnant," Resp. at 31 (Dkt. No. 64), contradicts her admissions that the One-Child Policy applies to a man and his wife.  *See* Zhang Dep. at 54:22-55:24 (Dkt. No. 32-1). Although only women can become pregnant, both men and women violate China's One-Child Policy by having more than one child, rendering that policy gender-neutral.

gender-neutral One-Child Policy. *See, e.g.*, Compl. ¶ 12 (Dkt. No. 1) ("Plaintiff was told by Defendant that she was *in violation of China's one-child policy*." (emphasis added)); *id.* ¶ 13 ("Plaintiff was told by Defendant during her pregnancy that, *because she was in violation of China's one-child policy*, she was being ordered to transfer back to China before the baby was born." (emphasis added)). Zhang's reliance on a gender-neutral policy dooms her disparate-treatment claim, and the Court should grant summary judgment to Tiptop on Zhang's gender-discrimination claim.

**E.     Zhang's demotion was not based on pregnancy (including gender) or national origin and therefore cannot form the basis of a "pregnancy-plus-national-origin" claim.**

Zhang's attempt to rescue her discriminatory-demotion claim by arguing that "pregnancy plus national origin" motivated the decision fails. Resp. at 29 (Dkt. No. 64). The undisputed evidence establishes that SIPC ordered Zhang's demotion solely due to her immigration status (*i.e.*, her U.S. lawful permanent-resident ("LPR") status), which cannot form the basis of a Title VII discrimination claim as a matter of law. *See Espinosa v. Farah Mfg. Co.*, 414 U.S. 86, 94-96 (1973); *Cortezano v. Salin Bank & Tr. Co.*, 680 F.3d 936, 940 (7th Cir. 2012); *Guimaraes v. Supervalu, Inc.*, 674 F.3d 962, 973 (8th Cir. 2012). In addition, the undisputed record evidence demonstrates that SIPC instructed Tiptop to demote Zhang because she held LPR status—and for no other reason. *See* Feng Dep. at 218:19-219:15 (Dkt. No. 32-2); *see also* Compl. ¶ 16 (stating that the demotion occurred "because she and her husband have permanent United States resident immigration status and refused to surrender that status").

Moreover, according to Zhang's own allegations, she did not tell SIPC or Tiptop

about her pregnancy until two months *after* the demotion.  *See* Compl. ¶¶ 11, 16 (Dkt. No. 1) (alleging that Tiptop "became aware that Plaintiff was pregnant" in "early May, 2015" but had demoted her in March 2015); Zhang Dep. at 16:3-9 (Dkt. No. 32-1) (admitting the demotion occurred "before Tiptop became aware of [her] pregnancy . . . ."); Feng Dep. at 218:19-219:15 (Dkt. No. 32-2) (stating that the demotion occurred in March 2015). It is thus impossible that "pregnancy plus national origin"—or pregnancy plus anything—could have motivated the demotion.  *See* Compl. ¶¶ 11, 16 (Dkt. No. 1); Zhang Dep. at 16:3-9 (Dkt. No. 32-1); *cf. also, e.g.*, *Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993) (no causal connection exists where decision-maker lacked knowledge of plaintiff's protected activity). The Court should summarily dismiss Zhang's discriminatory-demotion claim.

**F.    Zhang's "pregnancy-plus-national-origin" discrimination claim likewise fails because Zhang's status as an SIPC employee, and not her status as a woman of Chinese national origin, triggered the application of SIPC's rotation policy and China's One-Child Policy.**

The undisputed summary-judgment evidence negates Zhang's theory that China's One-Child Policy and SIPC's rotation policy applied to Zhang because she was a woman of Chinese national origin.  Zhang admits that Tiptop employed women of Chinese national origin as local employees (*i.e.*, they were not Chinese expatriates also employed by SIPC).  *See* Zhang Dep. at 45:19-46:14 (Dkt. No. 32-1).  She further concedes that SIPC regulations do not apply to local female employees of Chinese national origin, who may have more than one child and are not subject to SIPC's rotation policy:

> Q.    Are the Chinese employees of Tiptop who are local employees subjected to SIPC rules and regulations?

> A.  Local people, local people -- I think SIPC policy, not all SIPC policy apply to local people.
>
> Q.  So, for example, [local Tiptop employees] Zhuo and Nana can have two children.  Is that correct?
>
> A.  Yes.
>
> Q.  Because they're local Tiptop employees.  Is that right?
>
> A.  Yes.
>
> Q.  And they're also of Chinese national origin.  Is that correct?
>
> A.  Yes.
>
> Q.  And they would not have to return to China to have their children.  Is that correct?
>
> A.  Uh-huh, correct.

*Id.* at 47:16-48:7.  The undisputed summary-judgment evidence therefore establishes that China's One-Child Policy and SIPC's rotation policy applied to Zhang *only* because she was an SIPC employee, which is not a category protected by Title VII.  *See* 42 U.S.C. § 2000e-2(a) (making it an unlawful employment practice to discriminate "because of [an] individual's race, color, religion, sex, or national origin"); *Hill v. St. Louis Univ.*, 123 F.3d 1114, 1119-20 (8th Cir. 1997) (holding that the federal anti-discrimination statutes serve the "narrow purpose of prohibiting discrimination based on certain, discreet classifications such as age, gender, or race" and statutes "do not prohibit employment decisions based on poor job performance, erroneous evaluations, personal conflicts between employees, or unsound business practices").  Summary judgment on Zhang's "pregnancy-plus-national-origin" claim is warranted.

## G.  Zhang offers no evidence that Tiptop retaliated against her because she engaged in protected activity.

In her response, Zhang labels the following actions retaliatory:  (i) the failure of Financial Manager Jiang Xiang—her direct supervisor—to assign her work when he went on vacation shortly before her maternity leave; (ii) her reduced work assignments;

(iii) Xiang's restricting her access to financial records; and (iv) her lower performance evaluation.  *See* Resp. at 36-38 (Dkt. No. 64).  Tiptop addressed each of those actions in its motion for summary judgment, *see* Def.'s Mot. for Summ. J. at 19-20, 22-24 (Dkt. No. 32), and Zhang offers no evidence of pretext aside from timing and her own conjecture.  *See* Resp. at 36-38 (Dkt. No. 64).  But neither timing nor speculation is sufficient to raise a genuine issue of material fact as to pretext (as opposed to causation, which is an element of Zhang's prima facie case).  *See Annett v. Univ. of Kan.*, 371 F.3d 1233, 1240-41 (10th Cir. 2004) (holding that, although "close temporal proximity" may be sufficient to establish causation due to the "relatively lax burden" of establishing a prima facie case, it "is not alone sufficient to defeat summary judgment"); *id.* at 1241 ("Mere conjecture that the [defendant] acted with discriminatory reasons will not establish pretext.").

First, Zhang contends that Xiang's June 30, 2015 email was retaliatory because Xiang did not specifically assign her work. Resp. at 36 (Dkt. No. 64).  But Zhang conceded that her delivery date would soon follow and that she did not know what motivated Xiang's work assignments.  *See* Zhang Dep. at 87:18-88:21 (Dkt. No. 64-5).

Second, Zhang claims not to have complained about Xiang's financial improprieties until July 2015—two months after she told Tiptop about her pregnancy—and therefore contends that the reduction in work assignments and restriction of access to financial records could not have resulted from that complaint.  *See* Resp. at 15-16 (Dkt. No. 64).  But Zhang swore otherwise at deposition, testifying that she discovered the alleged malfeasance in March or April 2015, and she first confronted Xiang "shortly

after," which would have occurred *either before or around the time* she told Tiptop she was pregnant. *See* Zhang Dep. at 19:14-21 (Dkt. No. 32-1).[2] Zhang moreover admits that she does not know what motivated Xiang's work assignments or restriction of her access to financial records. *See* Zhang Dep. at 76:19-77:21, 88:13-21, 97:5-10 (Dkt. No. 32-1). Her speculation about Tiptop's motivation fails to raise a genuine issue of material fact as to pretext. *See Annett*, 371 F.3d at 1240-41; *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1237-38 (10th Cir. 2015); *Jones v. Denver Post Corp.*, 203 F.3d 748, 754 (10th Cir. 2000).

Finally, Zhang complains about her lower performance evaluation—a "meets standards" rating—for 2015. *See* Resp. at 32-33 (Dkt. No. 64). Tiptop offered evidence that Zhang received that rating because it judged her effort lower than in prior years and because she came to work late and left early at times during 2015.[3] *See* Feng Dep. at 192:25-195:22, 212:9-13 (Dkt. No. 32-2). Zhang cites to no *evidence* either suggesting that Tiptop gave her a lower evaluation because she opposed alleged discrimination or casting doubt on Tiptop's legitimate, nondiscriminatory reasons. *See id.*; Zhang Aff. (Dkt. No. 43-4) (failing to address her tardiness or absences). Zhang's conjecture that her lower performance evaluation was retaliatory does not raise a fact issue as to pretext. *See*

---

[2]     The Court should disregard Zhang's affidavit testimony about the timing of her report regarding Xiang Jiang's financial improprieties because it contradicts her prior testimony and constitutes an improper attempt to create a sham fact issue. *See Tellez v. City of Belen*, 560 F. App'x 812, 816 (10th Cir. 2014); *Juarez v. Utah*, 263 F. App'x 726, 734 (10th Cir. 2008); *see also* Tiptop's Objections to Plaintiff's Affidavit (Dkt. No. 67).

[3]     Although Zhang contends that her tardiness and absences were "limited to the later stages of her pregnancy," Resp. at 33 (Dkt. No. 64), the record evidence cited by Zhang does not support her assertions.

*Annett*, 371 F.3d at 1240-41; *Lounds*, 812 F.3d at 1237-38; *Jones*, 203 F.3d at 754.

**H.    Zhang's constructive-discharge claim fails as a matter of law because she points to no unlawful actions after she returned from leave that would have caused a reasonable person to feel compelled to resign.[4]**

Zhang's constructive-discharge claim rests only the following meager allegations:

- she was not given work during the first two weeks after she returned from maternity leave;

- she received a "C" (meets-standards) performance evaluation instead of an "A" or "B" evaluation;

- Wang offered to transfer Zhang to the IT Department; and

- her co-workers purportedly "isolate[d] and avoid[ed] her."

*See* Resp. at 38-39 (Dkt. No. 64).  But those contentions, even if supported by the record, cannot sustain a constructive-discharge claim.  The Tenth Circuit recently held that not receiving a promotion, exclusion "from work-related e-mail messages and meetings," a "lower performance review," discredited work by a supervisor, and "management sowing rumors that he would not be there much longer" were not, *as a matter of law*, sufficient to establish a constructive-discharge claim.  *See Sotunde v. Safeway, Inc.*, 716 F. App'x 758, 768-69 (10th Cir. 2017) (unpublished).  Zhang's even weaker assertions likewise are insufficient as a matter of law to withstand summary judgment.

First, Zhang's claim that Tiptop did not assign her any work during the first two weeks following her return from leave is not probative, especially where Zhang

---

[4]    Zhang contends that "a constructive discharge can be considered a tangible employment action that deprives the employer of the *Faragher/Ellerth* affirmative defense."  Resp. at 38 (Dkt. No. 64).  But Tiptop did not move for summary judgment on the *Faragher/Ellerth* affirmative defense but rather only on Plaintiff's failure to raise a material fact question on her constructive-discharge claim.  *See* Def.'s Mot. for Summ. J. at 24-28 (Dkt. No. 32).

admittedly did not ask for work or attend department meetings—despite her having received invitations—or even inquire about receiving an assignment during that time. *See* Zhang Dep. at 146:3-10, 149:9-18 (Dkt. No. 32-1).   Speculation and conclusory assertions about reduced work assignments is insufficient to support a constructive-discharge claim.  *See Trujillo v. N.M. Dep't of Corrs.*, 182 F.3d 933, 1999 WL 194151, at *6 (10th Cir. Apr. 8, 1999) (unpublished).

Second, contrary to her briefing, *see* Resp. at 38-39, Zhang admitted that various co-workers did not ostracize or shun her.  *See* Zhang Dep. at 70:11-73:13, 151:21-152:2 (Dkt. No. 32-1) (admitting that she continued to speak with Wang, Feng, Jinjing Tang, Hester Liu, and Jeff Leonard).  Zhang's subjective feelings of isolation are insufficient to support a constructive-discharge claim.  *See Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 858 (10th Cir. 2000).

Third, Zhang's "meets-standards" performance evaluation cannot support a constructive-discharge claim because Zhang offers no evidence, aside from speculation and conjecture, that it resulted from anything other than Zhang's admitted tardiness.  *See supra* Section II.G.   And a lower performance evaluation simply does not support a constructive-discharge claim.  *See Sotunde*, 716 F. App'x at 768-69.

Fourth, Zhang complains that, following her return from maternity leave in January 2016, Wang offered to move her to an "IT" position.  *See* Resp. at 39 (*See* Dkt. No. 64).  But Zhang admits that Wang proposed the transfer "so that Zhang would not have to report to [Xiang]," about whom Zhang had complained, and Wang subsequently did not move Zhang when she indicated her desire not to change jobs.  Resp. at 19 (Dkt.

No. 64); Feng Dep. at 189:4-25 (Dkt. No. 32-2).

Finally, Zhang fails to address her admission that both Wang and Feng—Tiptop's President and Office Manger—encouraged her to continue employment. *See* Zhang Dep. at 154:18-155:2 (Dkt. No. 32-1). In short, the events that occurred following Zhang's January 2016 return from maternity leave were insufficient, as a matter of law, to establish that any reasonable person would feel compelled to resign, and the Court thus should grant summary judgment to Tiptop on Zhang's constructive-discharge claim.

## I.    Zhang did not plead a breach-of-contract claim for expense reimbursements and therefore cannot recover them in the absence of any evidence that Tiptop's refusal to reimburse her was discriminatory or retaliatory.

By failing to address that Tiptop stopped expense reimbursements for all expatriate employees, including men, Zhang concedes that Tiptop's decision was not discriminatory.[5] Instead, she argues that she is entitled to those reimbursements because they "had been agreed to be made by Tiptop . . . ." Resp. at 30 (Dkt. No. 64). But Zhang pleaded claims only under Title VII; she did not plead a breach-of-contract claim, so she cannot recover expense reimbursements without evidence that Tiptop unlawfully discriminated against her. *Cf., e.g., Equity Asset Corp. v. B/E Aerospace, Inc.*, 388 F. Supp. 2d 1305, 1309 (D. Kan. 2005) (plaintiff may not rely on new, unpleaded legal theory in response to summary-judgment motion). Because Tiptop indisputably suspended reimbursements for *all* eligible employees, Tiptop's conduct does not, as a

---

[5]    To the extent Zhang implies that Tiptop did not reimburse only Chinese employees' expenses, she ignores that only Chinese expatriate employees actually received such expense reimbursements due to their SIPC expatriate assignment. *See, e.g.*, Corporate Rep. Dep. at 26:15-29:15 (Dkt. No. 32-3).

matter of law, violate Title VII.

**J.      Zhang's attempt to avoid the effect of SIPC's rotation policy on her front-pay claim fails because SIPC applied the policy to all expatriate employees.**

Tiptop presented evidence that SIPC implemented a rotation policy requiring all SIPC employees in "Zone 1" countries—including the United States—to rotate at least every four years, and that Zhang's four-year period would expire in June 2016.  *See* Tiptop's Mot. for Summ. J. at 28-29 (Dkt. No. 32).  In response, Zhang contends that the policy should not apply to her because SIPC implemented it solely to target Zhang.  *See* Resp. at 40.   But the undisputed evidence establishes that SIPC applied the rotation policy to other Tiptop expatriate employees—both men and women—*after* Zhang resigned.  *See* Feng Dep. at 20:9-21:10 (Dkt. No. 32-2); Corp. Rep. Dep. at 34:11-19 (Dkt. No. 32-3).  In sum, Zhang admitted that the rotation policy applied to her, and she cannot avoid its application to cut off damages because it applied to all SIPC employees.[6]

### III.   CONCLUSION

"Genuine issues of material fact are not the stuff of an opposing party's dreams. On issues where the nonmovant bears the ultimate burden of proof, [s]he must present definite, competent evidence to rebut the motion."  *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991), *cert. denied*, 504 U.S. 985 (1992).  Because Zhang has not done so, the Court should grant Tiptop's motion for summary judgment, dismiss all of Zhang's claims with prejudice, and award Tiptop its recoverable court costs.

---

[6]      Tiptop's suggestion that Zhang could have continued as a local employee does not affect her entitlement to lost wages because Zhang declined to pursue that option and instead resigned.  Zhang Dep. at 155:10-25 & ex. 11 (Dkt. No. 32-1).

Dated:  April 30, 2018.

Respectfully submitted,

*/s/ Marc H. Klein*
Marc H. Klein
 Texas Bar No. 11563012
 Pro hac vice

J. Meghan Nylin
 Texas Bar No. 24070083
 Pro hac vice

THOMPSON & KNIGHT LLP
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas  75201
Telephone:  (214) 969-1700
Facsimile:  (214) 969-1751
E-mail: marc.klein@tklaw.com
E-mail: meghan.nylin@tklaw.com

Timothy J. Bomhoff
 State Bar No. 13172

Paige H. Good
  State Bar No. 31595

MCAFEE & TAFT
Tenth Floor
Two Leadership Square
211 N. Robinson
Oklahoma City, OK 73102-7103
(405) 235-9621 office
(405) 235-0439 fax
E-mail: tim.bomhoff@mcafeetaft.com
E-mail: paige.good@mcafeetaft.com

ATTORNEYS FOR DEFENDANT
TIPTOP ENERGY
PRODUCTION U.S., LLC

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing was served by the Court's electronic filing system on this 30th day of April, 2018 on all counsel of record as listed below:

> J. Kelly Work
> 105 N. Hudson, Suite 304
> Oklahoma City, Oklahoma 73102
> jkwork225@gmail.com

> _/s/ Marc H. Klein_
> Marc H. Klein